**LODESTAR COMPANY, a California Corporation, et al., Plaintiffs,**

v.

**COUNTY OF MONO, et al., Defendants.**

**No. Civ. S–83–364 LKK.**

United States District Court, E.D. California,

July 24, 1986.

Hillel Chodos, Gideon Kanner, Beverly Hills, Cal., for plaintiffs.

Anthony Murray, James Polish, Paul R. Pearlson, James Robert Noblin Ball, Hunt, Hart, Brown & Baerwitz, Long Beach, Cal., for defendant Co. of Mono.

Nelson K. Brooks, Weintraub, Genshlea, Hardy, Erich & Brown, Sacramento, Cal., for defendants Mono Co. Bd. of Supervisors.

Myron Blumberg, Ave Buchwald, Myron Blumberg Law Corp., Mammoth Lakes, Cal., for defendant Town of Mammoth Lakes.

Gregory L. Myers, Myers & Overstreet, Fresno, Cal., for defendants Mammoth Unified School Dist.

## MEMORANDUM AND ORDER

KARLTON, Chief Judge.

### INTRODUCTION

The instant action is a suit by developers of certain property against certain governmental entities and their officers. I have previously addressed motions to dismiss the developers' complaint in an unpublished 55–page memorandum and order. Once again, I address another set of motions to dismiss. The vast majority of the issues raised are disposed of in a companion unpublished order.[1] Since the original com-

---

**1.** My reasons for limited publication here are the same as those expressed by me in *Kouba v.* *Allstate Insurance Co.,* 523 F. Supp. 148, 151 (E.D. Cal.1981).

plaint was filed in this action, a new town has been created within the defendant county. Plaintiffs' efforts to impose liability upon the town are the subject of my analysis below. This effort raises difficult and complex issues of liability relative to successor municipal entities.

## I

### THE PLAINTIFFS' COMPLAINT

I begin with plaintiffs' allegations.[2] Plaintiff Lodestar Company is a California corporation and the individual plaintiffs are the owners of the corporation and of the thirty-four (34) acre and one hundred sixty-five (165) acre parcels which make up the Lodestar property. The property is entirely situated in the town of Mammoth Lakes which is located within the County of Mono.

Defendants are (1) County of Mono ("County"), (2) individual members of the County Board of Supervisors, the County Council, the Assistant County Council and directors of the Public Works and County Road departments ("individual County defendants"), (3) the Mammoth Unified School District, the Superintendent of Schools for the District, the members of the Board of Trustees of the School District, the assistant general counsel for the School's Legal Service ("School"), and (4) the Town of Mammoth Lakes, its mayor and members of its Town Council ("Town").

Plaintiffs allege that since 1971, they have lawfully attempted to improve and develop the Lodestar property. ¶ 10. The property now sits vacant and unused with eight (8) condominiums completed, for which defendants have refused to issue occupancy permits, and with the foundations for another sixteen (16) condominiums for which defendants also have refused permits necessary for completion. ¶ 12. In summary, plaintiffs allege that defendants have (1) continuously changed the requirements that plaintiffs are required to meet in order to obtain the necessary zon-

ing and construction approvals, (2) ignored and violated the provisions of formal agreements, (3) ignored lawful and established procedures for processing land use applications, (4) attempted to coerce plaintiffs into waiving their right to recourse in the courts, (5) invidiously discriminated against plaintiffs by subjecting them alone to demands not visited on other developers, (6) repeatedly demanded that plaintiffs provide, at their own expense, improvements for public use as preconditions to land use approval and then, once the improvements were executed at great cost to plaintiffs, refused to give the promised approvals, (7) demanded that plaintiffs dedicate land far in excess of lawful requirements and in excess of the amounts previously agreed to by plaintiffs, (8) adopted a sham resolution to condemn land so as to ruin plaintiffs' building and development plans previously prepared at defendants' insistence and with defendants' approval while defendants have neither the intention nor the funds to implement such a condemnation resolution and have done nothing to implement it, and (9) arbitrarily refused to even consider plaintiffs' development plans and requests on their merits. ¶ 11.

By the combined effect of all of these actions and omissions, plaintiffs allege that defendants have rendered the Lodestar property useless, worthless, and unsaleable in the open market and caused plaintiffs to expend large sums on various requested plans and improvements which are now either useless or have unjustly enriched the defendants. ¶ 11.

Plaintiffs' Third Amended Complaint seeks relief predicated upon the following legal theories:

(1) Deprivation of federal constitutional rights under the equal protection and due process clauses of the Fourteenth Amendment of the Constitution of the United States;

(2) Denial of equal protection under the California Constitution;

---

**2.** On a motion to dismiss, the factual allegations of the complaint must be accepted as true. See § II, *infra.* Thus I examine defendants' mo-

tions against the factual allegations of plaintiffs' complaint. Third Amended Complaint, May 13, 1985.

(3) Inverse condemnation and/or taking of private property under the Fifth and Fourteenth Amendments of the Constitution of the United States;

(4) Inverse condemnation under California law;

(5) Breach of written contract and the express and implied covenants thereto;

(6) Mandamus relief under state law;

(7) Unjust enrichment;

(8) Estoppel.

Plaintiffs seek in their prayer a declaratory judgment and injunctive relief permitting them the development of their property and monetary relief to the extent that defendants' conduct has worked a temporary taking.

## II

### DISMISSAL STANDARDS UNDER FED.R.CIV.P. 12(b)(6)

On a motion to dismiss, the allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir.1983). The court is bound to give the plaintiffs the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks International Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1465 n. 6, 10 L.Ed.2d 678 (1963). Thus, the plaintiffs need not necessarily plead a particular fact if that fact is a reasonable inference from the facts properly alleged. *Id.; see also, Wheeldin v. Wheeler*, 373 U.S. 647, 648, 83 S.Ct. 1441, 1443, 10 L.Ed.2d 605 (1963) (inferring fact from allegations of complaint). In general, the complaint is construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

So construed, the court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Simon Oil Co. Ltd. v. Norman*, 789 F.2d 780, 781 (9th Cir.1986). In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that a plaintiff "can prove facts which it has not alleged or that defendants have violated ... the laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

## III

### ANALYSIS

When plaintiffs filed their original complaint, plaintiffs' property was situated in an unincorporated area of Mono County. ¶ 68. During the course of these proceedings, however, the Town of Mammoth Lakes was incorporated in accordance with California Government Code §§ 35000, et seq. *Id.* The Lodestar property is now located completely within the boundaries of the newly incorporated Town of Mammoth Lakes. ¶ 69. Plaintiffs allege that upon incorporation, all of the regulatory powers over zoning and land use development previously held by the County passed to the Town or were jointly held by the Town and the County. ¶ 71.

Shortly after incorporation, plaintiffs were informed by representatives of the Town that plaintiffs' development proposals and its claims would be reviewed and considered by the Town and its council in a fair and impartial manner and that the Town did not consider itself bound by the prior acts and policy of the County or School District prior to incorporation. ¶ 71. Plaintiffs allege that the Town has gone back on its word. *Id.* They assert that the Town has "as a matter of conscious policy" and "practical effect" continued to prevent plaintiffs from enjoying any of the rights or benefits of their ownership of the Lodestar property. ¶ 75. As evidence of that assertion they allege that since December, 1984, the Town has (1) failed and affirmatively refused to read plaintiffs' complaint

or any of plaintiffs' proposals for the development of the Lodestar property, (2) failed to establish any procedures by which plaintiffs' development proposals might be reviewed or considered by the Town, (3) affirmatively determined not to consider plaintiffs' development proposals, (4) failed and refused to grant occupancy permits for plaintiffs' eight existing condominiums, and (5) refused to consider plaintiffs' request for a development agreement conforming to an agreement called a Memorandum of Understanding ("MOU"). ¶ 74. Plaintiffs also allege that they have exhausted all reasonable administrative remedies prior to the institution of this action. ¶ 76.

Plaintiffs originally named the Town in a supplemental complaint seeking to add the Town as a defendant to Counts 9, 11, 12, and 13 of the original complaint, which sought prospective relief with respect to the future development of the Lodestar property. Second Supplemental Complaint. The Town then filed a motion to dismiss the Second Supplemental Complaint. The court, on its own motion, dismissed plaintiffs' supplemental complaint with leave to amend on a ground not raised by the Town—that the supplemental complaint failed to state federal claims against the Town sufficient to establish subject matter jurisdiction and thus required dismissal under *Ayala v. United States*, 550 F.2d 1196, 1200 (9th Cir.1977) (no pendent party jurisdiction in the Ninth Circuit), *cert. dismissed*, 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978). Plaintiffs then filed their First Amended and Supplemental Complaint, the one now before the court. It incorporates the allegations of the previous complaint, adds the members of the Town Council, and makes additional factual allegations relative to the Town defendants.

### A. The Premise of Town Liability.

Plaintiffs seek to impose liability on the Town on two bases. First, plaintiffs sue the Town for its own acts since incorporation on August 20, 1984. Plaintiffs allege that "[b]y the manner in which they have exercised or refused to exercise their regulatory powers over land development, the defendant Town and its council members have, as a matter of conscious policy and in any event as a matter of practical effect, continued to prevent plaintiffs from enjoying any of the rights or benefits or [sic] their ownership of the Lodestar property." ¶ 75.

Plaintiffs also seek to impose liability on the Town as a successor to the County. In this respect, plaintiffs allege that "[t]he Town is the successor of the County with respect to plaintiffs' claims," ¶ 68, and is thereby "bound by the County's obligations to plaintiff[s]." ¶ 104.

### 1. Can the Town Be Held Liable Under a Successor Theory Relative to the Federal Claims?

Under the allegations noted above, plaintiffs seek to impose liability on the Town relative to the federal constitutional claims, asserting the Town is a successor to the County and School defendants. More precisely, plaintiffs seek to do two separate things—impose monetary liability on the Town for the County's tort, and subject the Town to prospective injunctive relief. Each effort requires separate consideration.

### a. Monetary Liability

In cases brought under 42 U.S.C. § 1983, courts are required to look first to federal law on all matters. 42 U.S.C. § 1988; *Furtado v. Bishop*, 604 F.2d 80, 97 (1st Cir. 1979), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980). Thus I begin, as I must, with the language of the federal statute. Section 1983 provides in relevant part that:

> Every person who ... *subjects, or causes to be subjected*, any citizen ... to the deprivation of any rights, privileges or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added). Put simply, the question is whether under the statute the Town can be held responsible

for the torts allegedly committed by the County.

In *Monell v. New York City Department of Social Services*, a case that the Supreme Court has said "is a case about responsibility," *Pembaur v. Cincinnati*, —— U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452, 462 (1986), we are taught that the language underlined above plainly imposes liability on a municipality that, "under color of some official policy," causes an employee to violate another's constitutional rights. *Monell*, 436 U.S. 658, 692, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). The Court has explained that the language of the statute and its legislative history implies a very limited role, if any, for the application of the theory of vicarious liability. The legislative history of section 1983 suggested to the Court that "while Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of *others*." *Pembaur* —— U.S. at ——, 106 S.Ct. at 1297, 89 L.Ed.2d at 462, *citing Monell* 436 U.S. at 665–683, 98 S.Ct. at 2022–2032 (emphasis in *Pembaur.*) "[T]he fact that Congress did specifically provide that A's tort became B's liability if B 'caused' A to subject another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent." *Monell* at 692, 98 S.Ct. at 2036, *citing Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 651 (1976). Under such a reading, it seems relatively clear that the Town cannot be held liable for the County's torts.

Plaintiffs in oral argument have suggested that the conclusion that the Court reaches above is inappropriate because governmental bodies cannot be permitted to escape liability simply by the device of changing form. To the degree that plaintiffs are making a policy argument, of course this court is without power to address those concerns. Congress created section 1983 and it is for Congress to define the scope of liability thereunder. The argument may, however, be seen as a proposition that the Constitution limits the freedom of the states to limit the liability of their municipalities for a federal wrong and, accordingly, a state may not provide for avoidance of such liability by rearranging the boundaries of its political subdivisions. To the degree plaintiffs are making such an argument, the court agrees with the general premise, but finds it inapplicable to the allegations of this complaint.

The Supreme Court has held that as a general matter the state legislature maintains the power to enlarge, modify or diminish the governmental powers of a political subdivision such as a county. *County of Laramie v. County of Albany*, 92 U.S. 307, 312, 23 L.Ed. 552 (1875). Moreover, upon creation of a new entity where the legislature did not otherwise provide, "the rule is that the old corporation owns all the public property within her new limits, and is responsible for all debts contracted by her before the Act of separation was passed. Old debts she must pay, without any claim for contribution [from the new entity]." *Id.* at 315; *see also, Hunter v. City of Pittsburgh*, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907) (a citizen of one municipality is not constitutionally deprived of property without due process when he or she is subject to increased tax burdens as a result of a consolidation of his city with another). This holding has not been directly disturbed. *See Baker v. Carr*, 369 U.S. 186, 289 n. 23, 82 S.Ct. 691, 750 n. 23, 7 L.Ed.2d 663 (1962) (federal Constitution does not restrict state power to design structure of state political institutions); *City of Inglewood v. City of Los Angeles*, 451 F.2d 948, 954 (9th Cir.1971) (no claims for money damages by one municipal corporation against another arising under federal Constitution).

The state's broad discretionary power over municipal organization is, however, subject to certain constitutional limitations. In *Gomillion v. Lightfoot*, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960), the Court addressed a motion to dismiss plaintiffs' claim that the Alabama legislature's enactment of a statute redefining the boundaries of the City of Tuskegee was a device designed to disenfranchise black citizens of

their voting rights guaranteed by the Fifteenth Amendment. Defendants declined to assert any municipal function served by the redefinition of the boundaries. The Court observed that while it "freely recognize[d] the breadth and importance ... of the State's political power," over the organization of its political subdivisions, it would not "exalt this power into an absolute." *Id.* at 342, 81 S.Ct. at 127. The Court explained that *Laramie County* and related cases are "authority only for the principle that no constitutionally protected contractual obligation arises between a State and its subordinate governmental entities solely as a result of their relationship." *Gomillion* at 343, 81 S.Ct. at 123. The political subdivision cases, the Court said, fall within two classes: (1) those in which it is claimed that the State is without power to extinguish or alter the boundaries of a municipality by virtue of the prohibition against impairment of contract and the due process clause of the Fourteenth Amendment, and (2) those in which it is claimed that the State has no power to change the identity of a municipality whereby citizens of a pre-existing municipality suffer serious economic disadvantage. *Id.* at 343, 81 S.Ct. at 128. While the power of the state legislature is exceedingly broad it is not "omnipotent;" thus a state may not alter its boundaries "without preserving to the creditors of the old city some effective recourse for the collection of debts owed them." *Id.* at 344, 81 S.Ct. at 128. Any law which leaves no adequate means for the payment of debts is forbidden by the Constitution. *Id., quoting Port of Mobile v. Watson,* 116 U.S. 289, 305, 6 S.Ct. 398, 405, 29 L.Ed. 620 (1886). Thus, the Court explained that the power of the states to alter or destroy its subdivisions, "extensive though it is, is met and overcome by the Fifteenth Amendment." *Id.* 364 U.S. at 345, 81 S.Ct. at 129. Otherwise, the guarantees embedded in the Constitution could be " 'manipulated out of existence.' " *Id., quoting Frost v. Railroad Comm.,* 271 U.S. 583, 594, 46 S.Ct. 605, 607, 70 L.Ed. 1101 (1926). "When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right." *Id.* 364 U.S. at 347, 81 S.Ct. at 130. Thus plaintiffs' abstract argument is not without merit. Nonetheless, it cannot prevail here.

█ Plaintiffs have not made either of the allegations needed to bring them under *Gomillion*. First, they have not alleged that the incorporation of the Town of Mammoth Lakes was a device intended to deprive plaintiffs of their constitutionally protected property rights. Second, plaintiffs have not alleged that they are without "some effective recourse for the collection of debts owed them." *Gomillion* at 344, 81 S.Ct. at 128. From the allegations, it is clear that the County remains in existence, and from all that appears, possesses assets against which plaintiffs may proceed to collect on their judgment, if any. I thus conclude that under the allegations of this complaint there is no constitutional impediment to the formation of the Town free of its predecessors' tort liability.

### b. *Prospective Injunctive Relief*

The question of whether the Town is subject to prospective injunctive relief under section 1983 requires a separate and somewhat different analysis. Plaintiffs have alleged that although they seek damages, it is their "intention and preference" to develop their property. Prayer for Relief at A. Thus, plaintiffs primarily seek injunctive relief to allow them to proceed with development of the Lodestar property. Prayer at C(6) and D. Such relief, if appropriate, must of necessity apply to the Town because under the allegations, the Town now holds regulatory power over the development of plaintiffs' property. ¶ 71.

I have noted above that to obtain monetary damages, a plaintiff must prove that the defendant was a cause of the constitutional deprivation at issue. In addition to its compensatory features, however, § 1983 has a broad remedial purpose. "[T]he deterrence of future abuses of power by persons acting under color of state law is an

important part of the purpose of § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268, 101 S.Ct. 2748, 2760, 69 L.Ed.2d 616 (1981), *citing Owen v. City of Independence*, 445 U.S. 622, 651, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980). To achieve this purpose, the statute must be given a broad and generous reading.

> Because it is remedial in nature, section 1983 is appropriately suited to redress "any new method of interference" with the rights which its words protect. "For it is the constitutional right, regardless of the method of interference, which is the subject of the statute and which in precise terms it protects from injury or oppression."

*Green v. Dumke*, 480 F.2d 624, 628 n. 7 (9th Cir.1973), *citing United States v. Classic*, 313 U.S. 299, 324, 61 S.Ct. 1031, 1042, 85 L.Ed. 1368 (1941). Consistent with this understanding, in proceedings under section 1983, the trial court has broad power to grant or deny equitable relief. *Knowles v. Board of Public Instruction of Leon County*, 405 F.2d 1206, 1207 (5th Cir.1969). And,

> "[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will alter or adjust their remedies so as to grant the necessary relief. And it is also well-settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done."

*Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 239, 90 S.Ct. 400, 405, 24 L.Ed.2d 386 (1969), *quoting Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

In the instant context, the Supreme Court has suggested that prospective injunctive relief against successors to a political office may, under certain circumstances, be appropriate. In *Mayor of City of Philadelphia v. Educational Equality League*, 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974), black plaintiffs brought suit under section 1983 alleging that the mayor had violated their equal protection

rights by denying them appointment to the city school board nominating panel. During the pendency of the appeal from the district court's dismissal of plaintiffs' action, a new mayor assumed office. Thereafter, the court of appeals reversed the district court and directed prospective injunctive relief against the new mayor in the form of ordering the district court to undertake ongoing supervision of the new mayor's appointments to the panel. 415 U.S. at 612, 94 S.Ct. at 1329.

The Supreme Court reversed. The Court noted that the entire case had been focused on the appointments made by the previous mayor and nothing in the record supported the premise that the new mayor's appointment record "will track that of his predecessor." *Id.* at 622, 94 S.Ct. at 1334.

> Where there have been prior patterns of discrimination by the occupant of a state executive office but an intervening change in administration, the issuance of prospective coercive relief against the successor to the office must rest, at a minimum, on a supplemental finding of fact indicating that the new officer will continue the practices of his predecessor.

*Id.*, *citing, e.g., Spomer v. Littleton*, 414 U.S. 514, 520–22, 94 S.Ct. 685, 688–89, 38 L.Ed.2d 694 (1974) (in light of subsequent election of a different state's attorney, case vacated and remanded for a determination of whether former dispute is now moot and whether plaintiffs may amend their complaint to add claims against the new state's attorney).

■ The *Mayor of City of Philadelphia* case teaches that prospective injunctive relief against a successor under section 1983 is appropriate when the court makes factual findings that the successor will continue the predecessor's practices. Plaintiffs have made such an allegation here. They have alleged that the Town has "continued and contributed" to the deprivation of plaintiffs' civil rights. ¶ 75. That allegation is sufficient to avoid a motion to dismiss.

Accordingly, the Town's motion to dismiss plaintiffs' section 1983 claims based on its asserted status as successor to the

County is GRANTED as to monetary damages and DENIED as to injunctive relief.

### 2. Can The Town Be Held Liable As A Successor Under Plaintiffs' State Claims?

Having determined that only injunctive relief may lie against the Town in its successor status as to plaintiffs' federal constitutional claims, I now turn to the issue of whether the Town may be held liable as a successor of the County relative to plaintiffs' state law claims.[3]

The California Government Code provided that "[n]o city incorporation ... shall impair the rights of any bondholder or other creditor." § 35400.[4] The Town argues that applying conventional rules of statutory construction, the California Legislature did not intend "bondholder or other creditor" to mean every creditor, but only a bondholder or a like creditor holding similar evidence of indebtedness. Plaintiffs dispute this interpretation of the statute. I need not resolve these arguments.

■ Assuming that section 35400 did apply, plaintiffs have not alleged that their rights as creditors of the County have been impaired, *see* discussion *supra.* The County continues to exist, and there appears to be no basis for believing that its ability to respond in damages has been significantly impaired. Plaintiffs continue to be able to execute any judgment they may receive against the assets of the County. Under the circumstances, section 35400 would appear to provide no right of action against the Town.

Nor does California's common law appear to aid plaintiffs. Neither party has cited any case directly on point, nor has the court's independent research discovered any. Examination of California's law on analogous problems, however, does shed some light on the issue. Consideration of the state's law concerning the liability of corporations for their predecessor's torts clearly suggests that the Town is not liable for the County's torts.

■ Under California law, the purchaser of the principal assets of another corporation does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporation, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts. *Ray v. Alad Corp.,* 19 Cal.3d 22, 28, 136 Cal.Rptr. 574, 560 P.2d 3 (1977). Viewing the issue at bar as analogous to questions of successor corporate liability, it seems relatively clear that the Town is not liable for its predecessors' torts. Plaintiffs do not allege that the incorporation of the Town of Mammoth Lakes was accomplished either to escape the County's debts or to thwart plaintiffs' development. Nor do they allege that there was an express or implied agreement on the part of the Town to assume the County's debts and liabilities. In all, none of the prerequisites for successor liability appear to be satisfied.

For all of the above reasons, to the degree plaintiffs seek damages from the Town as a successor to the County for the County's tortious conduct under State law, the Town's motion is GRANTED.[5]

---

3. These are plaintiffs' claims predicated upon the California constitutional provisions pertaining to equal protection and inverse condemnation as well as the claims sounding in breach of contract, unjust enrichment, estoppel and mandamus.

4. Section 35400 was repealed as part of the repeal of the entire Municipal Organization Act, comprising Government Code §§ 35000 to 35500, 1985, ch. 541, p. ——, § 1, operative January 1, 1986. Because I hold in text that given their pleadings plaintiffs had no right of action against the Town based upon it being a successor of the County, I need not resolve the issue of whether the Amendment can, under either California or Federal law, operate to retrospectively deprive plaintiffs of their asserted rights under the previous law.

5. The Town has not separately argued the issue of whether injunctive relief could lie against it, and I do not separately consider the issue. I note, however, that the boilerplate injunction in California is directed to the party "defendant, its agents, employees, assigns, and those acting in concert with it."

B. *Disposition*

For all of the above reasons:

1. The Town's motion to dismiss plaintiffs' claims for monetary relief under 42 U.S.C. § 1983 premised upon the Town's status as a successor to the County is GRANTED, and its motion relative to injunctive relief is DENIED;

2. The Town's motion to dismiss plaintiffs' claims for monetary relief under plaintiffs' state claims premised on the Town's status as a successor to the County is GRANTED.

IT IS SO ORDERED.