951 F.2d 236
 21 Fed.R.Serv.3d 526
 Jerome GRIMES, Plaintiff,
v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant-cross-defendant-Appellee,
and
Nathan Johnson, Defendant-cross-claimant-Appellant.
Jerome GRIMES, Plaintiff,
v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant-cross-defendant-Appellant,
and
Nathan Johnson, Defendant-cross-claimant-Appellee.
 Nos. 90-16047, 90-16352.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Oct. 11, 1991*.
Decided Dec. 16, 1991.
 
 Wendy Alfsen-Cleveland, Cleveland Law Offices, Oakland, Cal., for Nathan Johnson.
 George K.H. Schell, Deputy City Attorney, San Francisco, Cal., for City and County of San Francisco.
 Appeal from the United States District Court for the Northern District of California.
 Before SKOPIL, PREGERSON and O'SCANNLAIN, Circuit Judges.
 BACKGROUND
 PREGERSON, Circuit Judge:
 
 
 1
 While off-duty, San Francisco Police Officer Nathan Johnson drew his gun and fired a warning shot during a traffic-related altercation with Jerome Grimes. As a result, Johnson was dismissed from the police force. Grimes sued both Johnson and the City and County of San Francisco ("the City"). Johnson cross-claimed against the City in connection with both his dismissal from the police force and the City's refusal to represent him against Grimes.
 
 
 2
 In his cross-claim, Johnson alleged that both his termination and the City's refusal to represent him followed from a practice or custom of discrimination by the City against non-white officers like himself. The City proved recalcitrant in responding to Johnson's discovery requests, prompting a magistrate to award attorney's fees to Johnson on several occasions and to impose an $85,000 sanction on the City.
 
 
 3
 Soon thereafter, the district court entered two separate orders. In the first, the court granted the City's motion for summary judgment on all of Johnson's claims. In the second, the court affirmed the magistrate's award of fees and imposition of sanctions, but sua sponte ordered the $85,000 to be divided among six non-party charities.
 
 
 4
 Johnson appeals from the grant of summary judgment and the redirection of the sanction money. The City appeals from the awards of attorney's fees and the imposition of sanctions.
 
 
 5
 We affirm in part and reverse in part.
 
 STANDARDS OF REVIEW
 
 6
 A grant of summary judgment is reviewed de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). A district court's judgment imposing sanctions for failure to comply with discovery orders is reviewed for abuse of discretion. Lew v. Kona Hospital, 754 F.2d 1420, 1425 (9th Cir.1985).
 
 DISCUSSION
 
 7
 I. Summary Judgment on the Termination Related Claims
 
 
 8
 Johnson was dismissed from the City's police department on March 26, 1986. Eighteen months later, on October 13, 1987, Johnson filed federal and state claims against the City in connection with his termination. Absent exceptional grounds, these claims would have been time-barred by either notice of claims statutes or statutes of limitation. In the intervening months, however, Grimes filed suit, and Johnson requested that the City represent him. On August 18, 1987, the City denied Johnson representation. Johnson urges that this refusal altered the nature of his termination from a discrete act into part of a continuous pattern of discrimination, tolling the operation of the notice and limitations statutes until August of 1987. If Johnson's termination claims are to survive summary judgment, this court must find that these claims were resuscitated by the City's subsequent refusal to represent him.
 
 
 9
 Johnson cites only one case, Perez v. Seevers, 869 F.2d 425 (9th Cir.), cert. denied, 493 U.S. 860, 110 S.Ct. 172, 107 L.Ed.2d 128 (1989), to support this contention. Johnson's hopes are misplaced. Perez does not discuss the continuing violation doctrine, and the language Johnson cites is taken out of context and is irrelevant to his argument. On the other hand, there is considerable authority that termination of employment is a discrete act which triggers the running of limitations statutes.
 
 
 10
 The Supreme Court has held that the continuing violations doctrine does not give new life to time-barred termination related claims, even where the effects of the termination are not, as here, immediately felt. Delaware State College v. Ricks, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (citing Abramson v. University of Hawaii, 594 F.2d 202, 209 (9th Cir.1979)).
 
 
 11
 This court has also held on several occasions that the continuing violations doctrine does not apply to employee termination cases. The continuing violation doctrine is intended to allow a victim of systematic discrimination to recover for injuries that occurred outside the applicable limitations period, as where an employee has been subject to a policy against the promotion of minorities. Williams v. Owens-Illinois, Inc., 665 F.2d 918, 924 (9th Cir.), cert. denied, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982). The termination of employment, however, differs markedly in that the employee is severed from an ongoing relationship with the employer. Id. "[M]ere 'continuing impact from past violations is not actionable. Continuing violations are.' " Id. (quoting Reed v. Lockheed Aircraft Corp., 613 F.2d 757, 760 (9th Cir.1980)). See also Abramson v. University of Hawaii, 594 F.2d at 209. Other circuits are in accord. E.g. Berry v. Board of Supervisors of L.S.U., 715 F.2d 971, 980 (5th Cir.1983) (termination of employment is not "a continuing violation which [extends] the time for filing. It [is] a discrete act of discrimination.").
 
 
 12
 Johnson's termination, even supposing it was motivated by discriminatory intent, was a particular act. While anti-discrimination laws may have provided a remedy, they also created an obligation on Johnson's part to file a timely complaint. This he failed to do, and his suggestion of a continuing violation is without merit.[1]
 
 
 13
 II. Summary Judgment on Claims Related to the Denial of Representation
 
 
 14
 Johnson alleges racial discrimination in the City's refusal to represent him in the suit by Grimes. To prevail on this claim, Johnson must first adduce some evidence showing that he was eligible to be represented. If Johnson was not eligible for City representation, then any discriminatory policy or practice by the City would be irrelevant because Johnson would never have come within the ambit of that policy.[2]
 
 
 15
 Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for summary judgment. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There can be no "genuine issue as to [a] material fact," however, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 
 16
 To defeat the summary judgment motion, Johnson must make some showing that he was eligible for representation by the City. That is, Johnson must produce some evidence that his altercation with Grimes fell within the broad parameters of his duties as a San Francisco police officer. Instead of adducing proof on this issue, Johnson rests on his allegations. This he is not permitted to do. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a showing on an essential element of her case with respect to which she has the burden of proof." Celotex, 477 U.S. at 323, 106 S.Ct. at 2552.
 
 
 17
 Johnson's failure to produce any evidence on the issue of whether his actions were within the scope of his police duties renders appropriate summary judgment against his denial of representation claims.
 
 III. Award of Attorney's Fees and Sanctions
 
 18
 The City appeals the awards of attorney's fees. Its arguments are not persuasive. The record indicates that the City did delay unnecessarily on several occasions, despite admonitions by the magistrate that fees would be assessed and sanctions imposed. The district court correctly held that the magistrate's fees orders were not clearly erroneous.
 
 
 19
 The City's objection to the imposition of a substantial monetary sanction poses a more interesting question. The history of this sanction is as follows. On February 27, 1989, the magistrate entered an order compelling the City to respond to Johnson's Rule 33 discovery requests and to pay attorney's fees of $3,000 as sanctions under discovery Rule 37. On June 28, 1991, the magistrate entered a second order to compel the City's compliance, imposing a further $2,850 in attorney's fees, and giving notice to the City of the scale of future sanctions. Specifically, the magistrate stated that "[a]n award of attorney's fees alone to counterclaimant Johnson, the aggrieved party, seems both unjust and ineffective, since such an award has not produced compliance by the City up to now." Order, June 28, 1989, p. 4. The magistrate therefore ordered that, "[c]ommencing on [July 10, 1989], should compliance with this order not be complete, the City and County shall pay to counterclaimant Johnson, as sanctions, $500 (five hundred dollars) per calendar day thereafter, until compliance is complete." Id., (emphasis added). On February 12, 1990, the magistrate entered a third order, which included the following finding: "After one year of contention over these interrogatories and documents, the City has provided precisely four substantive answers ... (two of which consist of the word 'no.' ...)" Order, February 12, 1990, p. 13. The magistrate concluded that "[s]ubstantial monetary sanctions are appropriate here. The milder sanctions of the earlier orders seem not to have compelled compliance with the Court's orders." Id., p. 15. The magistrate calculated that the City had failed to comply for 170 calendar days, multiplied that amount by $500 per day, and imposed a fine of $85,000.
 
 
 20
 The City argues that the magistrate's decision to impose a proscriptive sanction of $500 a day amounts to a finding of civil contempt, and cites authority showing that magistrates do not have the authority to find a party in contempt. The City is certainly correct that 28 U.S.C. § 636, which governs the jurisdiction and powers of magistrates, requires a magistrate to refer contempt charges to a district court judge. 28 U.S.C. § 636(e). However, the City does not provide authority to substantiate its claim that this sanction is actually a finding of civil contempt.
 
 
 21
 The authority of magistrates to impose discovery sanctions is established by 28 U.S.C. § 636 and recognized by our decisions. The authority of a magistrate to impose any order turns first on whether the order is construed as non-dispositive or dispositive. Fed.R.Civ.P. 72, implementing the Federal Magistrates Act, 28 U.S.C. §§ 604, 631-639. If the matter is not dispositive of a claim or defense of a party, a magistrate may enter "a written order setting forth [its] disposition." Fed.R.Civ.P. 72(a). The district court shall defer to the magistrate's orders unless they are clearly erroneous or contrary to law. Id. However, if the matter is dispositive, a magistrate shall confine herself to entering "a recommendation for the disposition of the matter." Fed.R.Civ.P. 72(b).
 
 
 22
 The Tenth and Fifth Circuits have held that sanctions are non-dispositive matters which may be imposed directly by a magistrate. "Discovery is clearly a pretrial matter, and magistrates thus have general authority to order discovery sanctions." Ocelot Oil Corporation v. Sparrow Industries, 847 F.2d 1458, 1462 (10th Cir.1988). "Despite appellants' contentions to the contrary, the magistrate possessed the authority under 28 U.S.C. § 636(b)(1)(A) to enter non-dispositive discovery orders," including reasonable expenses and attorney's fees. Merritt v. International Bro. of Boilermakers, 649 F.2d 1013, 1016-17 (5th Cir.1981).
 
 
 23
 We have cited both Ocelot and Merritt with approval. Maisonville v. F2 America, Inc., 902 F.2d 746, 748 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 674, 112 L.Ed.2d 666 (1991). In Maisonville, we considered a magistrate's authority to order Rule 11 sanctions, and concluded: "[T]he Rule 11 sanctions ... are non-dispositive. Accordingly, the magistrate had jurisdiction to order Rule 11 sanctions." Id. In doing so, we stressed that "we see no material distinctions between Rule 11 sanctions and Rule 37 [discovery] sanctions." Id.
 
 
 24
 The City argues, however, that even if magistrates have the authority to impose some sanctions, they do not have the power to fashion proscriptive sanctions which are designed to compel compliance with a discovery order. We disagree. The very purpose of Rule 37 is to insure compliance with discovery orders. "Without adequate sanctions the procedure for discovery would be ineffectual." C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2281 (1970 & Supp.1988). To that end, Rule 37 is flexible: "The sanctions enumerated in the rule are not exclusive and arbitrary but flexible, selective, and plural. The court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even." Id., § 2284.
 
 
 25
 With the need for this flexibility in mind, we reject the City's argument that prospective sanctions can only be imposed through a finding of civil contempt. See, e.g. United States v. Westinghouse Elec. Corp., 648 F.2d 642 (9th Cir.1981). We have already noted that "[a]s in civil contempt, discovery sanctions may be imposed to compel compliance with an order or to compensate the opposite party." Falstaff Brewing Corp. v. Miller Brewing Corp., 702 F.2d 770, 783 n. 10 (9th Cir.1983). We hold that magistrates may impose prospective sanctions pursuant to Rule 37 where such sanctions are necessary to enforce compliance with a valid discovery order.
 
 
 26
 In this case, the City's obstruction of the discovery process caused unnecessary delay and expense, and its willful disobedience of the magistrate's orders threatened the court's integrity. The magistrate had the authority to impose discovery sanctions, and the district court did not err in affirming the magistrate's $85,000 sanction of the City.
 
 IV. Redirection of the Sanction Money
 
 27
 Johnson appeals the district court's sua sponte decision to distribute the sanction award among six non-party charities. In reviewing the district court's decision, we bear in mind the following. A non-dispositive order entered by a magistrate must be deferred to unless it is "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a), 28 U.S.C. § 636(b)(1)(A). The district court reviews "the magistrate's order for clear error." Maisonville, 902 F.2d at 748. "Pretrial orders of a magistrate under 636(b)(1)(A) are reviewable under the 'clearly erroneous and contrary to law' standard; they are not subject to de novo determination...." Merritt, 649 F.2d at 1017. The reviewing court may not simply substitute its judgment for that of the deciding court. United States v. BNS, Inc., 858 F.2d 456, 464 (9th Cir.1988).
 
 
 28
 In this case, the district judge affirmed the magistrate's order imposing sanctions, but then of his own accord and without argument or briefing by either party modified that order to redirect the sanction money to non-party charities. The district court did so on the grounds that "the sanctions are contrary to law to the extent that they unjustly enrich one who pursues frivolous claims." This ruling has no basis in law. As such, it is an abuse of discretion, and does not comport with the standards set out in the statutes, rules, and cases discussed above. On the redirection of the sanction award, the district court is therefore reversed.
 
 CONCLUSION
 
 29
 First, summary judgment on Johnson's termination claims is affirmed. Second, summary judgment on Johnson's denial of representation claims is affirmed. Third, the award of attorney's fees and the imposition of discovery sanctions are affirmed. Fourth, the redirection of the sanction money is reversed.
 
 
 30
 The district court's judgment is AFFIRMED in part and REVERSED in part, with each side to bear its own costs.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 Any hindrance suffered by Johnson during discovery with respect to his termination claims is irrelevant because these claims are time-barred
 
 
 [2]
 It follows that any incomplete discovery on the issue of a discriminatory policy would also be irrelevant, even if such discovery was presumed to show conclusively that a policy of discrimination did exist