Linda ANTHONY, Plaintiff,

v.

COUNTY OF SACRAMENTO, SHERIFF'S DEPARTMENT; Sheriff Glen Craig; Deputy Sheriff Lee Parkhurst; Deputy Sheriff Don Folk; Deputy Sheriff Michael Ziegler; Deputy Sheriff Steve Osborne; Deputy Sheriff Linda O'Connor; Deputy Sheriff Darren Griem; Deputy Sheriff Jeff Reinel; Deputy Sheriff Mike Jones; Deputy Sheriff Wayne Mahan; Deputy Sheriff Jim Rose; Deputy Sheriff Johnny Vlahos; John Czekaj; Deputy Sheriff Michael Schuering, Defendants.

No. CIV S-93-1974 LKK/PAN.

United States District Court, E.D. California.

March 15, 1994.

Gary W. Gorski, Law Offices of John F. Whitfield, Jr., Rancho Cordova, CA, for plaintiff.

Nancy J. Sheehan, Porter, Scott, Weiberg & Delehant, Sacramento, CA, for defendants.

## ORDER

KARLTON, Chief Judge Emeritus.

On March 7, 1994, the court heard oral argument on defendants' motion to dismiss. All issues presented by the motion, except the sufficiency of plaintiff's claim under 42 U.S.C. § 1983, were disposed of from the bench. That issue was taken under submission and is disposed of herein.

## I

### DISMISSAL STANDARDS UNDER FED.R.CIV.P. 12(b)(6)

On a motion to dismiss, the allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). The court is bound to give the plaintiff the benefit

of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks International Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1465 n. 6, 10 L.Ed.2d 678 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *Id. See also Wheeldin v. Wheeler,* 373 U.S. 647, 648, 83 S.Ct. 1441, 1443, 10 L.Ed.2d 605 (1963) (inferring fact from allegations of complaint).

 In general, the complaint is construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). So construed, the court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors v. California State Council,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

## II

### THE ALLEGATIONS OF THE COMPLAINT

Plaintiff Linda Anthony, an African–American woman, brings this employment discrimination action against the County of Sacramento, the County Sheriff's Department, and 14 individuals including the Sheriff, two deputies who were plaintiff's immediate supervisors, 10 deputies who were her co-workers, and a civilian jail employee. Plaintiff alleges that, over a five-year period, she was subjected to an ongoing campaign of sexual and racial harassment and retaliation for her de-

fense of the rights of African–American inmates.

Plaintiff was originally hired by the County Sheriff's Department as a dispatcher in 1987. She began training as a deputy sheriff in 1988, and after six months at the training academy was assigned to the Rio Consumnes Correctional Center. In January 1989, plaintiff was transferred to the main county jail. Plaintiff alleges that she was subjected to racist and sexist comments, discriminatory treatment, and harassment in these work and training environments.

The complaint alleges numerous instances of racial epithets and conduct directed at African–American inmates, African–American law enforcement officers generally, and plaintiff in particular. Many of the comments and actions directed at plaintiff attacked her as a female, or combined insults to her race and gender. Plaintiff alleges that these factors created a hostile work environment in violation of her statutory and constitutional rights to be free from sex and race discrimination.

The complaint alleges beginning in 1991, plaintiff became an outspoken critic of the verbal and physical abuse often visited on African–American inmates at both jails by law enforcement personnel. Her supervisors allegedly ignored her reports of these violations of the rights of inmates, and co-workers intensified their abusive behavior toward plaintiff. Plaintiff attributes the numerous incidents of racial and sexual harassment alleged to have occurred between 1991 and the filing of this action in 1993, both to ongoing racial and sexual animosity towards her and to retaliation for her defense of inmate rights.

 Plaintiff's Fifth Cause of Action claims that the individual defendants are liable under 42 U.S.C. § 1983 for violation of her constitutional rights under color of law. Specifically, plaintiff alleges that racial and sexual harassment violated her rights under the 5th, 13th, 14th and 15th Amendments. The complaint's allegations of retaliation for speech additionally support a First Amendment basis for the section 1983 claim.[1] De-

---

1. It is well established that if the facts alleged make out a claim under section 1983, a failure to

fendants move to dismiss the claim as barred by the statute of limitations. They also argue that the section 1983 claim is legally insufficient because the complaint does not allege acts which constitute conduct "under color of law."

## III

### ACTION "UNDER COLOR OF LAW"

■■■ To assert a claim under 42 U.S.C. § 1983, plaintiff must demonstrate that she was deprived of a constitutional right by a person acting under color of law. *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989), *cert. denied*, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990). Plaintiff has alleged the deprivation of rights protected by the constitutional guarantees of equal protection and free speech. These claims are adequately supported by specific factual allegations. The question before the court is whether this alleged misconduct—racial and sexual harassment and retaliation for the defense of inmate rights, perpetrated by coworkers and supervisors—constitutes action taken under color of law.

■■■ A person acts under color of law for purposes of 42 U.S.C. § 1983 if he "exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)).

■■■ Employment by the state is relevant, but not conclusive, to the question of color of law. *Polk County v. Dodson*, 454 U.S. 312, 321, 102 S.Ct. 445, 451, 70 L.Ed.2d 509 (1981) (public defenders not acting under color of law when lawyering, because function performed serves interests of client rather than state). For that reason, the

Ninth Circuit looks to the nature of the conduct involved, as well as the surrounding circumstances, and not simply to the defendant's official capacity. *See, e.g., Traver v. Meshriy*, 627 F.2d 934, 938 (9th Cir.1980) (looking to circumstances surrounding off-duty police officer's conduct for "indicia of state action"). Whether a state employee acts under color of law turns on the relationship of the wrongful act to the performance of the defendant's state duties. *Dang Vang v. Vang Xiong X Toyed*, 944 F.2d 476, 479 (9th Cir.1991). Accordingly, I must determine whether the retaliation and harassment alleged in this case were sufficiently "related to the duties and powers incidental to the job" of deputy sheriff to state a claim.[2] *See Dang Vang*, 944 F.2d at 480 (quoting *Murphy v. Chicago Transit Authority*, 638 F.Supp. 464, 468 (N.D.Ill.1986)).

The job of deputy sheriff indisputably includes responsibility for the well-being of inmates, *see West*, 487 U.S. at 49–50, 108 S.Ct. at 2255–56, and thus encompasses response to complaints about their treatment. *Id.* For that reason, defendants abused the position and the responsibility given to them by the state in retaliating for speech protesting improper treatment of their charges. The allegations of retaliatory harassment accordingly support a viable claim under section 1983. *See Louisiana Pacific Corp. v. Beazer Materials*, 842 F.Supp. 1243 (E.D.Cal.1994) ("The Government is prohibited from retaliating for the lawful exercise of constitutional rights.").

■■■ Defendants argue that public employees may not be liable under section 1983 for harassment of a co-worker, because such harassment involves generic workplace power relationships which are independent of state-conferred authority. In *Dang Vang*, the Ninth Circuit found facts sufficient to establish action under color of law where a

---

specifically advert to the constitutional right implicated is immaterial. *Keniston v. Roberts*, 717 F.2d 1295, 1299 (9th Cir.1983).

**2.** Defendant John Czekaj was a civilian cook employed in the jail kitchen. A private person is a proper section 1983 defendant when he is alleged to have been a willful participant in joint

activity with state actors. *Stypmann v. City & County of San Francisco*, 557 F.2d 1338, 1341–42 (9th Cir.1977). The complaint in this case alleges that the individual defendants acted in concert. Accordingly, the claim against Czekaj is sufficient if the co-defendant deputies acted under color of law.

Washington State Employment Security office employee raped Hmong refugee women who had sought his official assistance. The court reasoned that the power which enabled the defendant to abuse the plaintiffs arose from his position as a government functionary, even though the assaults occurred outside the workplace. *Id.* at 480. This nexus between the defendant's misconduct and his relationship to the state was contrasted to cases involving acts of co-worker harassment which occurred in a state-created workplace but were found to be independent of state roles and functions. *Id.* at 479–80.

■■■■ Contrary to defendants' characterization, *Dang Vang* does not establish a general rule of section 1983 non-liability for co-employee harassment.[3] While the paradigm section 1983 case involves the abuse of state law enforcement authority over civilians, *see, e.g., Gibson v. United States*, 781 F.2d 1334 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987), action under color of law is always identified by reference to the relationship between defendant's alleged misconduct and

his state-created duties and powers, rather than the status of the parties. *See Polk County*, 454 U.S. at 321, 102 S.Ct. at 451; *West*, 487 U.S. at 56, 108 S.Ct. at 2259. Defendants' suggestion that abusive behavior towards a co-worker can never implicate state power is unfounded in both logic and law.[4] A state official may be liable for co-worker harassment under section 1983 when the abuse is related to state-conferred authority or duties—the same test that applies when the victim is not a state employee. *See Dang Vang*, 944 F.2d at 479; *Murphy*, 638 F.Supp. at 468.

■■ As explained above, plaintiff's allegations of retaliatory harassment support a section 1983 claim because response to complaints regarding the treatment of inmates is directly related to the duties and powers of law enforcement personnel.[5] The allegations of harassment predating plaintiff's defense of inmate rights are also related to the performance of the defendants' duties as deputy sheriffs.[6] The complaint depicts a work environment made racially and sexually hostile

---

**3.** *Dang Vang* was not a co-worker case, and the issue of section 1983 liability for treatment of co-workers was not before the court. The court's discussion of *Murphy v. Chicago Transit Authority*, 638 F.Supp. 464 (N.D.Ill.1986), and *Hughes v. Halifax County School Board*, 855 F.2d 183 (4th Cir.1988), *cert. denied*, 488 U.S. 1042, 109 S.Ct. 867, 102 L.Ed.2d 991 (1989), both of which dealt with on-the-job harassment and concluded, under the particular circumstances of each case, that there was no action under color of state law are dicta, and cannot constitute adoption of a per se rule barring such claims. Moreover, as I explain, none of these cases purport to establish a per se rule. *See* footnote 4, *infra*.

**4.** *Dang Vang, Murphy*, and *Hughes* do not assert that a section 1983 claim cannot lie where all parties are state employees. The three cases are consistent in requiring a particularized analysis of whether the alleged abusive conduct "bear[s] some similarity to the nature of the powers and duties assigned to the defendants." *Murphy*, 638 F.Supp. at 468. *See also Hughes*, 855 F.2d at 186–87 (actions are taken under color of law if "committed while the defendants were purporting to act under the authority vested in them by the state, or were otherwise made possible because of the privileges of their employment"). It is this nexus between the alleged misconduct and state authority, rather than the relative employment status of the parties, which determines the

viability of a section 1983 claim. *Polk County v. Dodson*, 454 U.S. at 321, 102 S.Ct. at 451.

**5.** This is true whether or not the individual defendants acted in a supervisory capacity vis-a-vis the plaintiff. The individual deputies were all under a state-conferred duty to protect inmate rights and respond appropriately to related complaints. They were in a unique position *as deputies*, not just as co-workers, to retaliate for such complaints. Accordingly, such retaliation is conduct under color of law, actionable under section 1983.

Supervisors may potentially be liable for the conduct of their subordinates as well as for their own acts of harassment and retaliation. *See Woodward v. Worland*, 977 F.2d 1392, 1400 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993) (supervisors liable for constitutional violations of subordinates where there are allegations of personal direction or actual knowledge and acquiescence). The allegations of the complaint are sufficient to state a claim for supervisory liability.

**6.** It is not entirely clear from the complaint whether plaintiff's complaints regarding inmate abuse began prior to 1991. To the extent that plaintiff alleges sexual and racial harassment preceding and/or independent of retaliation for such speech, the above analysis applies.

by related attacks on plaintiff individually,[7] on the abilities of African–American law enforcement personnel generally,[8] and on inmates of color.[9] The consistent theme linking these forms of abuse is that of African–American inferiority and criminality, in the context of law enforcement effectiveness.[10]

Such harassment is not independent of the powers and duties conferred on defendants by the state. Rather, the alleged pattern of harassment directly involves the discriminatory assertion of law enforcement authority. The connection between the specific acts of harassment alleged and the law enforcement duties and functions of defendants is accordingly sufficient to state a claim of constitutional violations "under color of law."[11]

## IV

### STATUTE OF LIMITATIONS

 The statute of limitations for a claim under 42 U.S.C. § 1983 is determined by the applicable state statute of limitations for personal injury actions. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In California, this is one year. Cal. Civ.Proc.Code § 340. Plaintiff alleges incidents of harassment from 1987 to 1993. Those events which took place more than one year prior to December 16, 1993, when the

7. Such acts include references to plaintiff as a "black bitch," and a flyer placed in her mailbox which read, "Warning: I can go from 0 to Bitch in 1.1 seconds."

8. Such acts include racist locker room graffiti regarding African–American deputies, and the comment that the department was so "desperate" that it was recruiting in Del Paso Heights (a largely African–American neighborhood).

9. Such acts include the regular use of the epithets "nigger," "nappy heads," and "baboons," racially-motivated beatings, and other physical abuse.

10. Other examples of this connection between the harassment and the performance of law enforcement deputies include newspaper articles about local criminal matters annotated with racist commentary, and an article left on plaintiff's desk titled "Why Cops Hate You."

11. As sworn peace officers, the defendant deputies were under a state law duty to enforce state law—including that prohibiting retaliation and discrimination. *See Pasadena Police Officers*

complaint was filed, would thus ordinarily be barred; however, they may form the basis of plaintiff's complaint if they are part of a continuing violation sufficient to toll the statute. *See Green v. Los Angeles County Superintendent of Schools,* 883 F.2d 1472, 1478 (1989).

 A continuing violation of section 1983 can be established by pleading and proving related serial violations or a pattern of discrimination against an individual that enters the limitations period. *Id.* The inquiry for application of the doctrine is whether the alleged discriminatory acts are closely enough related to constitute a continuing violation. *Id.* Here, plaintiff alleges acts of harassment and discrimination which were motivated by endemic racial and sexual animus and retaliation for particular forms of speech. As explained above, these acts are related by common motive, theme, target, and function in the workplace. Plaintiff's allegations, if proven, would therefore establish a continuous violation sufficient to toll the statute.

 An ongoing campaign of related harassment, like an ongoing policy of discrimination, constitutes a civil rights violation that continues rather than concludes with any individual act.[12] The last alleged act of

*Ass'n v. City of Pasadena,* 51 Cal.3d 564, 571, 273 Cal.Rptr. 584, 797 P.2d 608 (1990) (performance of law enforcement duties requires conduct consistent with state law and public policy).

12. Discrete acts such as termination, on the other hand, independently trigger the statute of limitations. *See Grimes v. City and County of San Francisco,* 951 F.2d 236, 238 (9th Cir.1991). In her opposition to this motion, plaintiff argues that she was constructively terminated from her position as a result of the harassment. The complaint refers obliquely to this termination, but does not provide dates or other supporting facts and does not assert the alleged termination as the basis for any of the claims.

Because the harassment which forms the basis for plaintiff's claims is an ongoing phenomenon rather than a discrete act, and is alleged to have entered the statutory period, the pleading of constructive termination is not relevant to the continuing violation analysis. For the same reason, plaintiff's discussion of *Grimes, supra,* and the "resuscitation" of expired claims by allegations of continued discrimination, is not relevant. Because the violation alleged here continued into

harassment occurred in February 1993, within one year of the commencement of this action. Accordingly, the complaint pleads a continuing violation which entered the limitations period, and plaintiff's claim is not time-barred.

## V

### *ORDER*

For all the reasons stated above, the motion to dismiss plaintiff's Fifth Cause of Action under 42 U.S.C. § 1983 is DENIED.

IT IS SO ORDERED.

the limitations period, plaintiff's claims do not require resuscitation.