**Audrey RODGERS and Nellie Walters, Plaintiffs,**

v.

**COUNTY OF YOLO—SHERIFF'S DEPARTMENT and Raymond O'Neal, individually and in his capacity as Supervisor, Animal Services, Defendants.**

No. Civ. S–92–1723 LKK.

United States District Court,
E.D. California.

May 31, 1995.

Margaret E. Roeckl, Anton & Roeckl, Berkeley, CA, for plaintiffs.

Carolee Kilduff, Bolling, Walter & Gawthrop, Sacramento, CA, for defendants.

### ORDER

KARLTON, Chief Judge Emeritus.

Pending before the court is defendants' motion for summary adjudication of plaintiffs' fifth, sixth, and ninth causes of action.[1] After a hearing on March 13, 1995, the motion was taken under submission, and is disposed of herein.

## I.

### THE COMPLAINT

Plaintiffs, Audrey Rodgers and Nellie Walters, were employed in the Animal Control Unit of the Yolo County Sheriff's Department. They allege that they were sexually harassed by their supervisor, Raymond O'Neal, and plead claims for relief under Title VII and 42 U.S.C. § 1983 against both O'Neal and the County of Yolo. Plaintiff Walters also brings a cause of action premised on the Rehabilitation Act. She alleges her dismissal resulted from the County's refusal to accommodate an asserted disability, to wit: alcoholism. Plaintiff Rodgers also alleges state law discrimination claims and a slander cause of action.

## II.

### SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir.1984).

Under summary judgment practice, the moving party

[A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file."

Id. at 324, 106 S.Ct. at 2553. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322, 106 S.Ct. at 2552.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir.1979), cert. denied, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n. 11, 106 S.Ct. at 1355 n. 11; Strong v. France, 474 F.2d 747, 749 (9th Cir.1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law,

---

1. Defendants initially requested summary adjudication of plaintiffs' first cause of action brought pursuant to Title VII, asserting that plaintiff Walters had failed to exhaust her administrative remedies. Defendants withdrew the motion upon plaintiffs' production of a copy of the charge filed with the EEOC.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510; *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir.1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (quoting Fed. R.Civ.P. 56(e) advisory committee's note on 1963 amendments); *International Union of Bricklayers, Local 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir.1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir.1982). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam)); *Abramson v. University of Hawaii*, 594 F.2d 202, 208 (9th Cir.1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight*

*Lines*, 602 F.Supp. 1224, 1244–45 (E.D.Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir.1987).

Finally, to demonstrate a genuine issue, the opposing party

> [M]ust do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356 (citation omitted).

### III.

### *FIFTH CLAIM FOR RELIEF*

▮ Plaintiffs' fifth cause of action purports to state a claim directly under the Fourteenth Amendment to the United States Constitution. Defendants correctly assert that in this circuit a claim for money damages against a municipality does not arise directly under the Fourteenth Amendment. *See Azul–Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993). Accordingly, this cause of action must be dismissed.

### IV.

### *SIXTH CLAIM FOR RELIEF*

Plaintiffs' sixth cause of action is directed at both defendant O'Neal and the County. It is brought pursuant to 42 U.S.C. § 1983, which provides a cause of action for a violation of civil rights under color of state law.

#### A. *Statute of Limitations*

▮ Defendants assert that the statute of limitations expired as to plaintiff Walters' claim prior to suit.[2] The statute of limitations for a section 1983 lawsuit brought in this forum is one year. *See Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Del Percio v. Thornsley*, 877 F.2d 785 (9th Cir.1989). The statute of limitations ordinarily begins to run when plaintiff knows or should have known of the injury. *See*

**2.** Defendants challenge the timeliness of the section 1983 claim as to plaintiff Walters only. Ac-

cordingly, I only examine the statute of limitations as to her claim.

*Elliott v. Union City,* 25 F.3d 800, 802 (9th Cir.1994).

■ Walters alleges a course of harassment beginning in November 1988, and continuing on for several years. O'Neal was transferred out of the Animal Control Unit in December 1990, and the instant suit was not brought until October of 1992. To overcome the apparent limitations bar, Walters asserts that even after O'Neal was transferred he returned to the unit and continued his conduct. (Pls.' Opp'n, Ex. G, Walters Decl. ¶ 3.)[3]

■ Fairly construed, plaintiff's section 1983 claim does not allege a cause of action predicated upon individual acts, but rather a course of conduct whose cumulative result was a violation of her right to equal protection. It has been said that where various incidents are alleged to collectively constitute wrongful conduct, the complaint raises questions under the continuing violation theory. *See Green v. Los Angeles Co. Superintendent of Schools,* 883 F.2d 1472, 1480–81 (9th Cir. 1989).[4] In order to establish a continuing violation of section 1983, plaintiff must plead and prove related serial violations or a pattern of discrimination that continues into the limitation period. *See Anthony v. County of Sacramento,* 845 F.Supp. 1396, 1402 (E.D.Cal.1994).

■ As I have previously explained, the appropriate initial inquiry relative to a claim of continuing violation asks whether the alleged discriminatory acts are closely enough related to constitute such a claim. *Id.* The theory covers acts which are in themselves continuing in nature. Thus it will embrace discriminatory policies which remain in effect over time, or a pattern of acts which, like a course of harassing conduct, do not individually violate rights, but cumulatively rise to the level of actionable conduct. A series of

discrete completed acts, however, even if they share an improper motive, is insufficient to toll the statute. *See Corbin v. Pan Am. World Airways, Inc.,* 432 F.Supp. 939, 944 (N.D.Cal.1977).

Here, Walters claims that O'Neal returned to the Animal Control Unit after his transfer and subjected her to the same type of sexually explicit inquiry that he had made when he was her immediate supervisor. Because this conduct is "related by common motive, theme, [and] target," *Anthony,* 845 F.Supp. at 1402, to the previous conduct, but may be viewed as not rising to the level of actionable conduct, vel non, it may suffice as a further instance of a continuing violation. Accordingly, if that conduct occurred within one year from suit, Walters' claim is not time-barred.

Defendants assert that plaintiff Walters' deposition testimony demonstrates that the last interaction between defendant O'Neal and plaintiff Walters occurred in December 1990, well outside the limitations period. Plaintiff's declaration avers that she experienced unwelcome sexual attention from defendant O'Neal in November, 1991.

■ As a general rule, statements made in declarations that contradict prior deposition testimony cannot be used to defeat a motion for summary judgment. *See Radobenko v. Automated Equipment Corp.,* 520 F.2d 540, 544 (9th Cir.1975). In the instant case, however, the deposition testimony which defendants offer to establish that the statute of limitations has run is not conclusive. Walters' deposition does not clearly establish the dates that certain incidents occurred after defendant O'Neal ceased to be her Animal Control Supervisor. (Defs.' Ex. C, Walters Dep. 119:5–15, 221:7–22, 230:21–233:2, 311:9–312:13.) Since her declaration

---

3. Plaintiff Walters asserts, in the alternative, that her claim against O'Neal should be equitably tolled because she was incapacitated for a period of approximately four months in the beginning of 1992. Even assuming that tolling were appropriate, if the last date of harassment was in December 1990, four months of tolling will not save plaintiff's claim.

4. If writing on a clean slate, this court would take a different approach to the question of when the statute of limitations begins to run where a cumulative effects claim is tendered. Because the underlying theory of such a claim is that it is the cumulative effect of a series of events which resulted in the deprivation of a constitutional right, it would seem appropriate to initiate the running of the statute from the time that the cumulative effect resulted in the wrong.

that the last act of harassment occurred sometime in November 1991 does not directly contradict her deposition testimony, it may be considered in resolution of the motion.

Since there is evidence sufficient to raise a triable issue concerning whether the alleged harassment continued into the limitation period, plaintiff's claim may survive the statute of limitations bar. Accordingly, the motion for summary judgment must be denied.

### B. The County

■ Under section 1983, a local governmental body "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).[5] Plaintiffs assert that the sexual joking, innuendo, and unwelcome sexual advances which they allege were endemic to the Animal Control Unit amounted to the custom of that department, and that ultimately that customarily sanctioned conduct cumulated to a deprivation of their Fourteenth Amendment guaranteed right to equal protection.[6]

■ Questions of custom raise issues of both duty and causation in fact. *See* S.H. Nahmod, *Civil Rights & Civil Liberties*, 2d ed. § 6.07, at 349–51 (hereinafter "Nahmod"). That is to say, if the deprivation was not imposed under color of a statutory specified source, the County has no duty to prevent the conduct. Moreover, since the County is not liable under a theory of respondeat superior, *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036, plaintiff must prove a causal link be-

tween the entity sued and the activity which violates section 1983. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985); *see also Gentile v. County of Suffolk*, 129 F.R.D. 435, 436 (E.D.N.Y.1990), *aff'd*, 926 F.2d 142, 152 (2d Cir.1991) (the question on appellate review is "whether there is sufficient evidence in the record of municipal policy, custom or practice, so that a jury could reasonably infer that the individual conduct ... was causally connected to the policy").[7]

■ In the matter at bar, there is no question that the actions taken after a complaint of sexual harassment was filed were taken by the County itself, or individuals who had the authority to act as the County. The unresolved question concerns the conduct within the Animal Control Unit prior to complaint to the County. As the court understands defendants' argument, for purposes of this motion, they do not contend that a custom did not exist in the Animal Control Unit. Rather, they contend that to impose entity liability the custom must be county-wide. Plaintiffs, on the other hand, seem to suggest that a fixed custom or practice within any subunit suffices to impose liability on the governmental entity.

■ The Supreme Court has, in dicta, explained the procedure appropriate to resolution of a section 1983 claim directed against a local government entity premised on deprivations of constitutional rights suffered under color of custom. First, the trial judge must identify, as a matter of state law, those persons or bodies responsible for final policymaking authority relative to the accused conduct. Then the jury determines "whether

---

**5.** The holding rests on the language of the statute which makes liable those who have subjected others to a deprivation of constitutional rights "under color of any ... custom or usage." 42 U.S.C. § 1983.

**6.** The amendment provides in pertinent part, "nor shall any State ... deny to any person within its jurisdiction the equal protection of the laws." Violation of the rights protected by the amendment gives rise to a claim under section 1983. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 174 n. 44, 90 S.Ct. 1598, 1617 n. 44, 26 L.Ed.2d 142 (1970); *Lynch v. Household Finance Corp.*, 405 U.S. 538, 545, 92 S.Ct. 1113, 1118, 31

L.Ed.2d 424 (1972); *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).

**7.** This court has previously noted that,

"The legislative history of section 1983 suggested to the [Supreme] Court that 'while Congress never questioned its power to impose civil liability on municipalities for their own illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of others.'"

*Lodestar v. County of Mono*, 639 F.Supp. 1439, 1444 (E.D.Cal.1986) (citations omitted).

their decisions [including] acquiescence in longstanding practice or custom" have caused the deprivation of rights at issue. *Jett v. Dallas Ind. School,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598, 628 (1989).

Professor Nahmod has suggested that to support entity liability under section 1983 while avoiding imposition of respondeat superior liability, the asserted custom must be the equivalent of a de facto official policy. Nahmod at 352–53. For that reason, he suggests that the existence of such a de facto policy must be evidenced by more than a custom which only lower-level employees are aware of and practice. *Id.* While there is much to recommend this approach, I fear the manner of formulation threatens to misdirect the inquiry.

 I have previously explained that "[c]ustom appears to require settled governmental practice or '[d]eeply embedded traditional ways of carrying out [county] policy.'" *Knight v. Carlson,* 478 F.Supp. 55, 58 (E.D.Cal.1979) (citing to *Nashville, Chattanooga, & St. Louis Ry. v. Browning,* 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1940)); *see also Jett,* 491 U.S. at 737, 109 S.Ct. at 2724 (custom equated with "standard operating procedure"). In a thoughtful exploration of the problem, Chief Judge Weinstein has proposed that

> The appropriate inquiry in [a] *Monell*-type claim focuses on the actual or constructive knowledge of the municipality as well as upon the implied knowledge and reliance of municipal employees on that practice.

*Gentile,* 129 F.R.D. at 446, *aff'd,* 926 F.2d 142 (2d Cir.1991). Put another way, where actual or constructive knowledge of a long-settled unconstitutional practice exists, the County has a duty under the statute to respond. Moreover, where under such circumstance the County fails to respond, it, in effect, ratifies the policy by acquiescence, thus supplying the causative link.

I conclude from the above that the question at bar need not be framed as one addressing whether the County is necessarily responsible for all the customs or practices which develop in all of its divisions, nor necessarily whether under County policy a small subunit of government has a policymaking function relative to the behavior of its personnel. Rather, it is sufficient to inquire as to whether the circumstances are such that the County had actual or constructive knowledge of the existence of the alleged custom or practice and failed to address it. Resolution of this issue requires a fact-intensive analysis of the evidence relative to whether the County knew, or had reason to know, of the existence of the custom. Thus facts concerning longevity and pervasiveness bear significantly on the issue. Evidence of reliance by municipal employees on the customary practice may be of particular importance since it suggests a settled practice sufficiently long-standing so as to provide a basis for an inference of actual or constructive knowledge.

Because the parties failed to develop the appropriate legal analysis,[8] they have failed to directly tender evidence relevant to resolution of the issue. On that basis alone, defendants, who have the initial burden of production (*see* section II, *supra*) cannot prevail on this motion. Nonetheless, the court notes that there is sufficient evidence in the record to draw inferences adverse to the moving party. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. Thus plaintiffs' evidence concerning the apparent belief of the employees of the unit that vulgar and demeaning conduct, as well as unwelcome sexual advances, were both acceptable and expected provide a basis for an inference both as to custom and reliance. (Anton Decl., Pls.' Exs. A, B, C, and F.)

## V.

### NINTH CLAIM FOR RELIEF

The ninth cause of action is Walters' claim under the Rehabilitation Act ("Act"), 29 U.S.C. § 794. Defendants attack the claim on both legal and factual grounds.

---

8. The defendants cited no authority for their assertion that a policy must be county-wide, nor did plaintiffs cite authority in support of some lesser unit distribution.

▆▆ They first assert that the Act is not applicable because the Animal Control Unit does not receive federal financial assistance, a prerequisite to liability under the Act. *See* 29 U.S.C. § 794(a). I cannot agree.

Plaintiff Walters' termination is the employment action that gives rise to her claim. In order to terminate an employee from a position within the Animal Control Unit, approval from the County is required. (Pls.' Opp'n, Ex. C, Carr Dep. at 81:15–82:10.) Accordingly, the adverse employment decision at bar was made by the County, an entity that admittedly receives federal financial assistance. (Defs.' Answer ¶ 13.)[9] Given this disposition of defendants' legal claim, I now turn to the factual showing.

▆▆ To establish a prima facie wrongful discharge claim under the Rehabilitation Act an individual must show that she was terminated because of her disability. *See Nisperos v. Buck,* 720 F.Supp. 1424, n. 4 (N.D.Cal. 1989), *aff'd,* 936 F.2d 579 (9th Cir.1991). In support of their motion, defendants submit the deposition testimony of Captain Michael Carr, copies of plaintiff Walters' poor performance evaluations over an extended period of time, and the various letters of reprimand and discipline she received. (Defs.' Reply, Ex. 4; Kilduff Decl., Ex. F.) This evidence is essentially unrefuted and demonstrates that plaintiff Walters' termination was based on poor performance.

Plaintiff may be read to be claiming that her performance problems were the result of, and correlated to, her contemporaneous abuse of alcohol. As I now explain, if that is her claim, it is unavailing.

▆▆ The Rehabilitation Act offers protection to alcoholics who are maintaining sobriety. Thus, if plaintiff were experiencing performance problems because of her disease, rather than because of her drinking, the Act would be relevant to her claim. On the other hand, the Act excludes from coverage those whose consumption of alcohol prevents "performing the duties of the job in question or whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others." 29 U.S.C. § 706(8)(C)(v) (1995 Supp.).

The parties agree that plaintiff's position required that she drive County vehicles and carry a weapon. Given these job requirements, under the statute her imbibing of alcohol to a point where it impairs her ability to perform takes her out of the protection of the Act.[10]

For the above reasons, summary judgment must be entered for defendants on this claim.

## VI.

### *ORDER*

For all the reasons stated above, IT IS HEREBY ORDERED that:

(1) Defendants' motion for summary adjudication of the Fifth Claim is **GRANTED;**

(2) Defendants' motion as to the Sixth Claim is **DENIED** with respect to both defendants;

(3) Defendants' motion for summary adjudication of the Ninth Claim for relief is **GRANTED;**

(4) Defendants' request for "supplementing briefing" and to re-open the law and motion period is **DENIED;** and

(5) A Pretrial Conference has been **SET** for July 24, 1995, at 3:30 p.m. The parties are reminded that Pretrial Statements **MUST BE FILED** in accordance with the Status (Pretrial Scheduling) Order no later

---

9. Because I find that Animal Control's receipt of federal financial assistance irrelevant, I do not consider whether review of the untimely additional briefing submitted by defendants or the additional case cited by plaintiffs is appropriate.

10. Indeed, arguably, even independent of the provision dealing with alcoholism, plaintiff would not have a claim under the Act. The regulations provide, in pertinent part, that a qualified handicapped person is one who "with or without accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others." 29 C.F.R. § 1613.702(f).

than seven (7) days prior to the Pretrial Conference.

IT IS SO ORDERED.