Sherri L. **REITTER**, Plaintiff,

v.

**CITY OF SACRAMENTO**, Defendant.

No. CIV S–98–1606 LKK/PAN.

United States District Court,
E.D. California.

March 17, 2000.

Leo F. Donahue, law offices of Leo F. Donahue, Gold River, CA, for plaintiff.

Bradley Stephen Thomas, Mason and Thomas, Sacramento, CA, for Defendant.

KARLTON, District Judge.

■ Plaintiff sues her former employer, the City of Sacramento, under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*, and California's Fair Employment and Housing Act, Cal. Gov't Code §§ 12940, *et seq.*, alleging a hostile work environment.[1] The matter is before me on the City's motion for summary judgment. I decide the motion on the pleadings and papers filed herein and after oral argument.

1. The elements of a hostile work environment claim under the FEHA track the elements of such a claim under Title VII. *See Fisher v. San Pedro Peninsula Hospital,* 214 Cal.App.3d 590, 608, 262 Cal.Rptr. 842 (1989); *Guthrey v. State of California,* 63 Cal.App.4th 1108, 1122–23, 75 Cal.Rptr.2d 27 (1998). Thus, I do not discuss plaintiff's FEHA claim separately.

2. The basic facts are stated below and are undisputed unless otherwise noted. Various other facts are adverted to in the course of the opinion.

3. Plaintiff alleges that Sadorra licked her neck, played with her hair, put his finger in his mouth and then in her ear, grabbed her breasts, brushed up against her chest, hit her on the rear, put his hand on her sweater and cupped his hand around her breast, placed his hand inside her bra, stared at her and licked his lips suggestively, asked her to take a shower with him and used language replete with sexual innuendos in her presence.

   The City does not dispute plaintiff's allegations.

## I.

### THE FACTS[2]

Plaintiff worked for the City in its Workers' Compensation Department. Karen Long was plaintiff's supervisor. Toward the end of her tenure at the City, plaintiff was sexually harassed by a co-worker, Patrick Sadorra.[3]

On February 20, 1998, plaintiff complained to a co-worker, Sue Ortiz, about Sadorra. That same day, Ortiz conveyed plaintiff's complaint to Long who then asked plaintiff to relate what happened in her own words.

Margaret Allen, the head of the Workers' Compensation Department, was out of the office that day. The following Monday Allen returned, and Long informed her of plaintiff's complaint. The next day, February 24, Allen and Long met with plaintiff to discuss the issue further. Allen and Long advised plaintiff that they would report her allegations to Ken Flemming, the Affirmative Action Officer, who would conduct an investigation. Although plaintiff asked that Sadorra not be punished, she also asked Allen and Long to keep him away from the third floor where she worked.[4] Long responded that the City

4. In its Statement of Undisputed Facts, the City contends that plaintiff told Allen and Long that she did not want Sadorra reprimanded or fired. *See* Def.'s Statement of Undisputed Facts, No. 14. Plaintiff's response to the City's statement admits this contention. *See* Pl.'s Response to Def.'s Statement of Undisputed Facts, No. 14. Nonetheless, a close examination of the evidence demonstrates a more complex and nuanced picture.

   At deposition counsel asked plaintiff whether she told Allen and Long that she wanted Sadorra fired; plaintiff responded that she did not. *See* Pl.'s Depo. at 95:21–22.

   Counsel then asked plaintiff: "Did you ever tell them that you didn't want anything bad to happen to Patrick, that you just wanted to be left alone?" *Id.* at 96:5–7. Plaintiff responded: "I probably said something like that." *Id.* at 96:8. Later in the deposition, however, plaintiff testified that Sadorra was "a little bit mean and vindictive" and therefore that her purpose "was not to have him humiliated in any way." *Id.* at 109:6–11.

   I must assume for summary judgment purposes, that plaintiff's uncommunicated reason for expressing a desire that Sadorra not be

could not oblige plaintiff's request to keep Sadorra off the third floor because he had business there.[5]

Flemming returned from his vacation approximately one week later. Allen, Long and Flemming then met with plaintiff. Again, Flemming advised plaintiff that the City would have to conduct an investigation but assured her that the City would take steps to address her allegations.[6] Plaintiff reiterated her request that Sadorra be ordered to stay away from her.

On March 3, 1998, Flemming met with Sadorra and his supervisor, Jack Anderson. Sadorra admitted that he had touched plaintiff's breasts. Anderson and Flemming chastised Sadorra for his inappropriate and unacceptable behavior. They ordered Sadorra not to visit the third floor without first informing Anderson and to refrain from speaking with or retaliating against plaintiff. They also required Sadorra to attend counseling. Finally, they warned him that any further inappropriate sexual conduct on his part would result in immediate disciplinary action, up to and including termination.

It is undisputed that Sadorra complied with the directives he received.

Given these facts I now turn to the City's motion. The standards applicable to motions for summary judgment are well known, *see, e.g., Rodgers v. County of Yolo,* 889 F.Supp. 1284 (E.D.Cal.1995), and need not be repeated here.

## II.

## CO–WORKER HARASSMENT

Plaintiff asserts that the City is liable for the sexual harassment she suffered at the hands of Sadorra, a non-supervisorial co-worker.[7] I turn first to the elements of a hostile work environment claim and then to the issue of vicarious liability.

A hostile work environment exists where an employee can demonstrate "(1) that he or she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ellison v. Brady,* 924 F.2d 872, 875–76 (9th Cir.1991)(citing *Jordan v. Clark,* 847 F.2d 1368, 1373 (9th Cir.), *cert. denied sub nom., Jordan v. Hodel,* 488 U.S. 1006, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989)); *see also Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)(conduct must be so "severe" or "pervasive" that it "alter[s] the conditions of [the victim's] employment and create[s] an abusive working environment.") The plaintiff must both objectively and subjectively perceive the work environment to be

---

disciplined was the fear of retaliation. Later in the opinion I discuss whether the City was entitled to rely on plaintiff's statement of what would suffice to cure the hostile environment created by Sadorra's conduct.

**5.** Ordinarily an asserted victim's unverified accusation is an insufficient basis for discipline. Whether under the circumstances of this case the City was obligated to isolate plaintiff from Sadorra pending an investigation will be discussed subsequently.

**6.** It is unclear whether plaintiff communicated all or just some of the incidents listed in note 3 to Ortiz or Long prior to her meeting with Flemming. In her deposition, however, plaintiff is questioned about her meeting with "Ken" (i.e. Ken Flemming), as follows:

" Q: Did you meet with Ken?
A: Yes, I did.
Q: Who else was present?
A: Margaret and Karen
Q: Did you go through the whole scenario again?
A. Yes I did"
Pl.'s Depo. at 103:17–22.

While, to say the least, the deposition is not a model of careful questioning and clear response, it suffices to base an inference that, at least by the time of the meeting with Flemming, the City was fully informed of plaintiff's allegations.

**7.** Plaintiff makes no claim that she sustained a tangible adverse employment action. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

hostile due to the sexual harassment. *Fuller v. City of Oakland,* 47 F.3d 1522, 1527 (9th Cir.1995).

The City does not contest that Sadorra's conduct created a hostile work environment for plaintiff. Nonetheless the City challenges plaintiff's effort to hold it liable for his conduct.[8]

The Supreme Court has recently explained that "whether an employer has vicarious liability" turns on the "general common law of agency." *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 754, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).[9] In identifying the governing principles the court found that "the Restatement (Second) of Agency (1957) ... is a useful beginning point for a discussion of [those] principles." *Id.* at 755, 118 S.Ct. 2257.

As the Supreme Court noted, under the Restatement a master is liable for the torts of his servant committed while acting in the scope of his employment. The court observed, however, that an employee sexually harassing a co-employee ordinarily is not so engaged. *Id.* at 756, 118 S.Ct. 2257.[10] Nonetheless, the Court explained, a master may be liable for conduct of employees outside of the scope of employment when the conditions specified in Restatement § 219(2) exist. *Id.* at 758, 118 S.Ct. 2257;[11] *see also Faragher,* 524 U.S. at 801, 118 S.Ct. 2275. There is no suggestion in the matter at bar that the City intended the conduct or its consequences, that Sadorra purported to act on behalf of the City, or finally that he was aided in sexually harassing plaintiff by virtue of an agency relationship. Thus, the question is whether the City can be held liable by virtue of its own negligence as a contributing factor to Sadorra's harassment of the plaintiff.[12]

"(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:

(a) the master intended the conduct or the consequences, or

(b) the master was negligent or reckless, or

(c) the conduct violated a non-delegable duty of the master, or

(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation."

Restatement of Agency 2d. § 219(2).

---

8. The issue of vicarious liability is particularly urgent given the Circuit's holding that the perpetrator of sexual harassment is not personally liable under Title VII for the injury sustained by virtue of his conduct. *Miller v. Maxwell's Intern'l Inc.,* 991 F.2d 583 (9th Cir.), *cert. denied sub nom., Miller v. La Rosa,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). I have elsewhere explained why *Miller* is wrongly decided as a matter of statutory interpretation. *See Ostrach v. Regents of Univ. of Cal.,* 957 F.Supp. 196 (E.D.Cal.1997). No purpose is served by repeating that analysis here. It is important to note, however, another reason to conclude that *Miller* is misguided. One purpose of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). By providing immunity to the perpetrator and resting employer liability on principles of vicarious liability, there is a substantial chance that a victim will not be compensated, despite Congress' command to the contrary.

9. The issue is vicarious liability because the harasser was a co-worker, and thus, as I explain in the text, the City was not directly responsible for his conduct.

10. Although *Ellerth* dealt with liability for supervisorial misconduct, its general principles appear to apply to all instances in which the employer may be held vicariously liable for sexual harassment.

11. The Restatement provides:

12. After taking the City's motion for summary judgment under submission, the court ordered the parties to brief whether Title VII creates a non-delegable duty in the employer to insure that the workplace is free of environmental discrimination. The order was premised on the Supreme Court's holding in *Ellerth* that an employer may be liable for sexual harassment perpetrated by its employees under the conditions specified in Restatement § 219(2).

The City responded to the court's order citing, *inter alia,* the Ninth Circuit's decision in *Burrell v. Star Nursery, Inc.,* 170 F.3d 951 (9th Cir.1999). The *Burrell* court noted that, before the Supreme Court decided *Ellerth,* the Circuit "followed the rule that an employer may be found liable in a hostile work environment case only for what management-level employees 'knew or should have known.' " *Burrell,* 170 F.3d at 955 (quoting *Nichols v.*

# 1044

■] Because the test for employer liability for co-worker sexual harassment is negligence, the employer is only liable in circumstances in which management-level employees knew or should have known about the harassment. *Burrell*, 170 F.3d at 955.[13] Although initially ignorant, an employer may nonetheless be liable for the conduct once learning of it "unless it can show that it took immediate and appropriate corrective action." *Ellison*, 924 F.2d at 881 n. 16 (quoting 29 C.F.R. § 1604.11(d)).

I now turn to the two phases underlying plaintiff's complaint: first, the City's responsibility prior to Ortiz's discussion with Long; and second, the adequacy of the City's response.

## A. PRE–FEBRUARY 20, 1998

■ The City does not contest that, before February 20, 1998, the date its supervisors first heard of plaintiff's allegations, Sadorra's conduct created a work environment hostile to plaintiff on the basis of her gender. The question is whether the City's supervisory employees knew or should have known before that date about Sadorra's propensity for misconduct and thus, acted before plaintiff's injury. Although Long, Allen and Anderson each testified at deposition that before plaintiff no woman employee had complained about Sadorra's conduct, plaintiff has adduced evidence which may raise a contrary inference.

Plaintiff testified at deposition that she had a conversation with Long after the latter had conveyed plaintiff's allegations to Allen. Plaintiff asked Long whether Allen was surprised. Long responded: "No she wasn't. We've had complaints and problems with Patrick before." Pl.'s Depo. at 99:19–23. Plaintiff also testified

that, during a later conversation, Long told her that "Jack Anderson was furious about having so many problems with Patrick." *Id.* at 106:22–25. The first question is whether this evidence suffices to support an inference that the City received complaints about Sadorra's inappropriate sexual behavior before February 20, 1998.

While Long's purported remarks do not explicitly address inappropriate sexual conduct, given the court's obligation to draw all reasonable inferences in favor of the nonmoving party, *Matsushita Elec. Indu. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), I cannot say that a reasonable jury could not determine that the City's supervisory employees were or should have been aware of Sadorra's inappropriate sexual behavior. Should the jury draw this conclusion, plaintiff will have established a prima facie case of liability based on Sadorra's conduct before February 20, 1998, for it is undisputed that, until plaintiff conveyed her allegations, the City did nothing to remedy the hostile work environment created by Sadorra's conduct.

## B. POST–FEBRUARY 20, 1998

Once Ortiz relayed plaintiff's allegations to Long, the City was on notice of Sadorra's conduct towards plaintiff. As noted above, an employer is responsible for acts of sexual harassment in the workplace once its agents or supervisory employees know or should know of the conduct "unless it can show that it took immediate and appropriate corrective action." *Ellison*, 924 F.2d at 881 n. 16.

The first question under this test turns on how promptly the employer responded to the employee's complaint. While an employer may ordinarily delay acting until

---

*Frank*, 42 F.3d 503, 508 (9th Cir.1994)), and then declared "[t]his rule still applies to sexual harassment by co-workers", *id.*, thus disposing of the issue without analysis. I am, of course, bound by the *Burrell* decision.

**13.** Because negligence turns on duty, which in turn turns on foreseeability, W. Page Kee-

ton, et al., *Prosser and Keeton on the Law of Torts*, § 43, at 284 (5th ed.1984), if a reasonable employer neither knew, nor under the circumstances should have known of the potential for harm, the injury cannot be said to have been foreseeable. Accordingly, the employer cannot have had a duty and thus cannot be found to have been negligent.

it completes an adequate investigation, that leeway may not apply in the instant case. If the jury determines that Sadorra had engaged in previous misconduct and that the City's supervisory employees had knowledge of that conduct, a jury could conclude that liability should be imposed for the injury resulting from the City's failure to bar Sadorra from the third floor pending further investigation.

Beyond the issue of promptness is the adequacy of the City's ultimate response. The Supreme Court has explained that Title VII's "primary objective ... is not to provide redress but to avoid harm." *Faragher*, 524 U.S. at 806, 118 S.Ct. 2275. Because the primary objective of Title VII is to avoid harm, a remedy will suffice where it is proportional to the conduct and "reasonably calculated to end the harassment." *Ellison*, 924 F.2d at 882. The Ninth Circuit has suggested that appropriate employer responses may include expressing strong disapproval of the conduct, reprimanding the harassing employee, putting the harassing employee on probation and warning that repeated harassment may result in suspension or termination. *Id.*

[9] Here, once Sadorra admitted to Flemming and Anderson that he had sexually harassed plaintiff, they took prompt action. They permitted Sadorra to visit the third floor only on official business and then only after informing his supervisor. Second, they ordered Sadorra not to approach or speak to plaintiff. Third, they ordered Sadorra to obtain counseling through the Employee Assistance Program. Fourth, they forbid Sadorra to represent the City while out-of-town on business for the following year. Fifth, they advised Sadorra that his conduct was inappropriate and unacceptable and that it would not be tolerated by the City. Finally, Anderson and Flemming warned Sadorra that any further complaints of his inappropriate sexual conduct would result in immediate disciplinary action, up to and including termination. *See* Sadorra Depo. at 105:8–15, 111:16–19, 112:2–7 and 20–26, 113:1–3 and 17–24.[14] Thereafter, Anderson checked on Sadorra periodically to verify that he was attending counseling sessions and avoiding contact with plaintiff where possible. *See* Sadorra Depo. at 125:8–14. In effect the City took every disciplinary action, short of discharge, suggested by the Ninth Circuit.

Moreover, the City's response to plaintiff's allegations was effective in ending the harassment. Sadorra testified during his deposition that, after the meeting with Anderson and Flemming, he understood he had violated the City's sexual harassment policy. Sadorra Depo. at 115:20–26, 116:1–9. Sadorra's conduct after the meeting demonstrated this understanding, for he attended all required counseling sessions and avoided contact with plaintiff.[15]

Nonetheless, "in some cases the mere presence of an employee who has engaged in particularly severe or pervasive harassment can create a hostile working environment. To avoid liability under Title VII for failing to remedy a hostile environment, employers may even have to remove employees from the workplace if their mere presence would render the working environment hostile." *Ellison*, 924 F.2d at 883 (citations omitted). The question is whether this is such a case.

As a prerequisite to resolving the question the court must ask whether, despite the City's corrective action, a hostile work environment continued. As noted above, a hostile work environment requires that the conduct be such that both objectively and

---

**14.** Plaintiff objects to Sadorra's deposition testimony on the ground that his recital of Anderson's and Flemming's statements is inadmissible hearsay. The objection does not lie. The statements are not introduced for their truth but for the purpose of demonstrating what the supervisors told Sadorra.

**15.** Plaintiff testified during her deposition that Sadorra approached her once but that he did so as she stood in a public place (by the copy machine) and said nothing more to her than "hello." *See* Pl.'s Depo. at 127:17–25.

subjectively the conditions of employment are altered. The objective test is normative in character, i.e. it asks what a reasonable person under the circumstances would feel. The subjective question addresses the plaintiff's actual state of mind, a factual question.

█] Given the severity of the conduct, a reasonable jury could conclude that, as an objective matter, the City's continued employment of Sadorra rendered the work environment hostile. Plaintiff's statement that she did not want Sadorra disciplined, however, may demonstrate her subjective belief that his termination was not necessary to end the hostile work environment.[16] I turn to that possibility, noting that neither the parties' briefs, nor this court's independent research has uncovered authority concerning the effect of such a hostile work environment victim's request not to discipline upon the duty of the employer to adequately redress the wrong.

Plaintiff has testified that, despite her request that nothing adverse happen to Sadorra, she indeed was distressed by Sadorra's continued employment. At deposition plaintiff testified that, after Anderson and Flemming disciplined Sadorra, she found the work environment subjectively hostile: "I never felt comfortable about what they had done, if that was going to deter him from coming back and talking to me again; because, as I told you, he was very persistent." Pl.'s Depo. at 127:11–14. This testimony, if believed, demonstrates that the City's discipline of Sadorra did not cure the hostile environment. Moreover, it is not unreasonable to recognize that a victim's request that the miscreant not be discharged may be, as plaintiff testified it was here, motivated by considerations entirely divorced from her perception of what is necessary to cure the hostile work environment. Accordingly, a jury could

conclude that a reasonable employer would have, at a minimum, asked plaintiff what concerns motivated her statement, and that a failure to do so was negligent.

On the other hand, holding that as a matter of law an employer may not rely on the victim's statement of her state of mind raises serious policy issues. First, it is premised on a wholly inappropriate paternalism in which the employer knows better than the victim what is in her best interest. Second, the victim's state of mind is only directly available to her, and it seems unreasonable to require the employer to second guess her report of her subjective state.

These competing considerations raise difficult issues. It seems to the court, however, that I need not resolve them. As noted above, the question of plaintiff's subjective state of mind is one of fact. Such issues are generally considered inappropriate for resolution on summary judgment. *Fonda v. Gray,* 707 F.2d 435, 438 (9th Cir.1983). Put simply, it appears to this court that the policy issues are resolved by putting to the jury for resolution the issues and the adequacy of the employer's response under all the circumstances, including plaintiff's request.

For all the above reasons, the City's motion for summary judgment must be denied.

## III.

## ORDERS

For all the foregoing reasons, the court hereby makes the following ORDERS:

1. The City's motion for summary judgment is DENIED;

2. A Pretrial Conference is SET for March 27, 2000 at 10:30 a.m.; and

---

**16.** The City does not claim that plaintiff is estopped from bringing a hostile work environment claim because of her request. That reticence is fully justified. To invoke equitable estoppel, the defendant must demonstrate, *inter alia,* a statement which was expected to induce reliance and reasonably did so. *See,*

*e.g., Pisciotta v. Teledyne Industries, Inc.,* 91 F.3d 1326 (9th Cir.1996). Here, although the City did not terminate Sadorra, it did discipline him. That fact forecloses a contention that it relied on plaintiff's statement that she wanted nothing bad to happen to him.

3. Trial will be set at the Pretrial Conference.

IT IS SO ORDERED.